IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| EVAN MARCUS, #A1038669, | ) | CIV. NO.11-00181 DAE/RLP |
|---|---|---|
| Plaintiff, | ) | |
| | ) | ORDER DISMISSING COMPLAINT |
| vs. | ) | |
| | ) | |
| FRANCIS SEQUEIRA, TIME LEA'E, SERGEANT MAXILUM, AARON MARAFUENTES, JACKIE LINDSEY, KIM KAILI, MICHAEL CHUN, CASE MANAGER "MONICA", JOHN AND JANE DOES 1-10, | ) | |
| Defendants. | ) | |

## **ORDER DISMISSING COMPLAINT**

Before the court is *pro se* plaintiff Evan Marcus's ("Plaintiff") prisoner civil rights complaint. Plaintiff names employees of the Oahu Community Correctional Center ("OCCC"),[1] including Warden Francis Sequeira, Chief of Security Time Lea'a, Sergeant Maxilum, Adjustment Committee Members Aaron Marafuentes, Jackie Lindsey, Kim Kaili, and Michael Chun, Case Manager "Monica," and John/Jane Does 1-10, as defendants to this suit (collectively, "Defendants"). Plaintiff alleges that Defendants violated the Eighth and

---

[1] Plaintiff is now housed at the Saguaro Correctional Center ("SCC") in Eloy, Arizona, but during all relevant times he was housed at OCCC.

Fourteenth Amendments when they negligently failed to protect him from assault by another inmate, confined him in segregation for 130 days, and upheld disciplinary proceedings against him for fighting. The court granted Plaintiff's *in forma pauperis* application on March 30, 2011, *see* Doc. No. 4, and now screens the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A)(b)(1). The Complaint is DISMISSED for Plaintiff's failure to state a claim. Plaintiff is granted leave to amend the Complaint, if possible, to cure its deficiencies.

## I. **PLAINTIFF'S CLAIMS**

When Plaintiff was reporting for work on August 12, 2010, he noticed an altercation at the OCCC Makai Annex. Plaintiff heard yelling, saw an inmate with a stick, and two prison guards trying to calm the prisoner down. Plaintiff continued on to the OCCC kitchen in Annex-1, where he was responsible for setting up breakfast with his co-worker, "Mano." When he entered the kitchen area, Plaintiff saw that inmate Donald Couch and two other inmates were present in addition to Mano, in violation of prison policy. Plaintiff claims that Couch began harassing him. Plaintiff verbally responded and moved towards Couch, causing Couch to "explode[]," knocking Plaintiff unconscious. When he awoke, Plaintiff saw that prison officials had seated Couch, Mano, and the other two inmates together. Plaintiff was taken to the Queen's Medical Center and treated

2

for a broken nose, two black eyes, cuts requiring stitches and staples, and a concussion.[2] Plaintiff alleges that Defendant Sergeant Maxilum's "negligence along with other [unknown] prison guards . . . instigated the attack on Plaintiff." Compl. at 9.[3] Plaintiff complains that the unnamed prison guards were "lax[] in their procedures [and] don't care who's roaming around." *Id.* at 10. Plaintiff alleges that Maxilum, who was in charge of Annex-1, and the unidentified prison guards on duty, failed to protect him in violation of the Eighth Amendment. *Id.* at 8, Count I.

When Plaintiff returned from the hospital, he was put in administrative segregation pending investigation of this incident. Plaintiff remained in administrative segregation for approximately ninety days, until his disciplinary hearing was held. On November 18, 2010, Plaintiff received written notice that an Adjustment Committee hearing regarding the incident would be held on November 24, 2010. Plaintiff requested a "counsel substitute"[4] to represent

---

[2] The Honolulu Police Department was also called. A Detective Kau investigated the incident, interviewed the three inmates who were not involved in the fight, who each collaborated Couch's statement that he acted in self-defense. No criminal charges were brought against Plaintiff or Couch.

[3] To avoid confusion, the court refers to the Complaint's electronic pagination as reflected in the docket.

[4] The Department of Public Safety ("DPS") allows an inmate facing a disciplinary hearing to request a "counsel substitute," defined as "a staff member

him, and Committee Chair Marafuentes directed him to contact Segregation Unit Case Manager "Monica." Plaintiff claims he submitted a formal, written request to Monica, Sequeira, Lea'e, and Chun for counsel substitute, but never received a response.

On November 24, 2010, the disciplinary hearing was held.[5] Based on the committee members' "demeanor and silence," Plaintiff assumed his request for counsel substitute was denied and did not pursue the request. The Committee allowed Plaintiff to explain his side of the story only, from the point when he entered the kitchen and was allegedly assaulted. Plaintiff claims that he was not allowed to "respond to evidence [he] thought might be against him," nor presented with any evidence against him. Plaintiff was only informed of the evidence against him, presumably the other inmates's statements, when he was found guilty of fighting. Plaintiff complains that he was in ankle and wrist restraints during the hearing, which prejudiced the Committee against him. Plaintiff was sanctioned

---

who did not actively participate in the process by which the inmate was brought before the committee." DPS Policy and Procedures COR 12.08.2.1(a) (provided in Complaint).

[5] Plaintiff says the Committee Members were Marafuentes, Lindsey and Kaili. A hearing report, attached to the Complaint, shows that Chun, Lindsey, and Kaili comprised the hearing officers, however. *See* Compl. at 19.

4

with thirty days in disciplinary segregation, which Plaintiff complains did not take into account the ninety days he had already spent in administrative segregation.

Plaintiff alleges that his placement in segregation and the events leading up to and at the disciplinary hearing violated his rights to due process, and that his confinement in segregation constitutes cruel and unusual punishment. *See* Compl., Counts II and III.

## II. **STATUTORY SCREENING**

The court is required to screen all complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if a plaintiff raises claims that are legally frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2), § 1915(e)(2). If a pleading can be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc).

# III. DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 129 S. Ct. 2431 (2009); *accord West v. Atkins*, 487 U.S. 42, 48 (1988).

## A. Due Process

The Due Process Clause protects prisoners from the deprivation of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a due process claim, a plaintiff must first establish the existence of a liberty interest. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). Liberty interests created by prison regulations or state law are limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The process that is constitutionally due an inmate placed in segregation depends on whether the placement is disciplinary or administrative. *Toussaint v. McCarthy*,

801 F.2d 1080, 1099 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472.

### 1. *Placement in Administrative Segregation*

Typically, placement in segregated housing in and of itself does not implicate a protected liberty interest. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Hewitt*, 459 U.S. at 466-68 (holding that the Due Process Clause does not confer a liberty interest in being confined in the general prison population instead of administrative segregation). This is because placement in segregation falls within the terms of confinement ordinarily contemplated when a prison sentence is imposed, and so normally "comport[s] with the prison's discretionary authority." *Toussaint*, 801 at 1091-92. Allegations by a prisoner that he was denied due process in connection with the decision to administratively segregate him do not present a constitutionally cognizable claim, absent a showing that the specific deprivation meets *Sandin*'s "real substance" test. *See, e.g.*, *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

Before placing an inmate in administrative segregation, prison officials are required to: (1) conduct an informal nonadversary review of the evidence justifying the decision to segregate the prisoner within a reasonable time of placing the prisoner in administrative segregation; (2) provide the prisoner with

7

some notice of the charges before the review; and (3) give the prisoner an opportunity to respond to the charges. *Toussaint*, 801 F.2d at 1100. The prisoner is not entitled to a "detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id.* at 1100-01. If a prisoner is retained in administrative segregation, officials must periodically review the initial placement. *Id.* at 1101.

Plaintiff says that he saw Couch and the three other inmates segregated together as he was being taken to the hospital. This suggests that prison officials intended to conduct an immediate informal investigation of the incident. When Plaintiff returned to the prison, he was also informed that he would be housed in administrative segregation "for investigation of the alleged misconduct COR.13.03.3a.7(1) 'fighting with another person." Compl., Count II at 13. Plaintiff received written notice of his placement in administrative segregation from Warden Sequeira within five days, and he received updated notices every week thereafter. *See id.* This fully comports with the due process requirements for placement in administrative segregation. *See Toussaint*, 801 F.2d at 1100-01.

Nor does Plaintiff allege that his term of incarceration was extended, or that the conditions of confinement in administrative segregation imposed

8

atypical or significant hardship in relation to the normal incidents of daily life at OCCC. Plaintiff says he was denied reading material (other than a bible), a radio, writing paper and envelopes, and was confined in a very small cell. Compl. at 22. These facts do not support a finding of atypical or significant hardship. It is also unlikely that segregation at OCCC, a medium security facility, imposes more severe conditions than segregation at the Halawa Correctional Facility ("HCF"), Hawaii's maximum security prison, where the Supreme Court held that disciplinary segregation, which mirrored administrative segregation, did not impose atypical or significant hardship. *See Sandin*, 515 U.S. at 484 (holding that the conditions within segregation at HCF and the length of confinement (30 days) "did not work a major disruption in [inmate's] environment"). Plaintiff received all the process he was due prior to his transfer to administrative segregation and does not sufficiently allege facts showing that his confinement there imposed atypical or significant hardship in relation to the normal incidents of prison life in OCCC.

  2. *The Disciplinary Proceedings and Disciplinary Segregation*

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The minimum procedural requirements

9

regarding disciplinary proceedings are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner when the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563-71. As long as the five minimum *Wolff* requirements are met, due process is satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994).

Moreover, "the requirements of due process are satisfied if 'some evidence' supports the decision of the hearing officer or the prison disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Touissaint*, 926 F.2d at 802-03 (9th Cir. 1991); *cf., Burnsworth v. Gunderson*, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt it may be unnecessary to demonstrate existence of liberty interest). This standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ." *Hill*, 472 U.S. at 455-56.

Plaintiff was given notice of the hearing a week before it convened and received a written statement of the evidence the Committee Members relied on and their reasons for imposing discipline thereafter. Plaintiff does not claim that he was denied witnesses, or explain who those witnesses may have been, or that he had some documentary evidence to present that was denied. Rather, Plaintiff states that the only witnesses to the altercation, Couch and the three other inmates present during the fight, all supported Couch's version of events. Plaintiff was allowed to explain his side of the story, and in fact, admitted that he raised his voice at Couch and that he regretted doing so.

Plaintiff is not illiterate and the issues surrounding the incident are not complex, so he had no right to counsel substitute under *Wolff*, or under the prison's regulations. Nor does Plaintiff claim that he pursued his request for counsel substitute at the hearing; Plaintiff assumed the request was denied and let the matter go. There was clearly "some evidence" of Plaintiff's guilt as provided by the other inmates. Plaintiff's allegations, without more, are insufficient to support a claim of denial of due process during the disciplinary proceedings. Further, as discussed above, Plaintiff's allegations do not support a showing that the ministerial housing change from administrative to disciplinary segregation

amounted to an atypical or significant change from the normal conditions of confinement at OCCC.

Insofar as Plaintiff also complains that his transfer to HCF and SCF as a result of the disciplinary proceedings violated his due process rights, he is mistaken. Prisoners have no constitutional right to incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244–48 (1983). A prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him to any of its institutions without offending the Constitution. *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985). A non-consensual transfer does not violate either due process or equal protection, *see Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991), even if the transfer is for disciplinary reasons or to a considerably less favorable institution, *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *see also Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989) (transfer from work release center back to prison). Consequently, Plaintiff has also failed to state a cognizable claim for relief based upon his transfer from Hawaii.

Plaintiff received all of the process that he was due, both before and during his administrative segregation, at his disciplinary hearing, and when he was administratively changed to disciplinary segregation. Plaintiff's allegations do not

show that his placement in segregation was beyond the prison officials' discretion to impose or that the liberty in question was one of "real substance." Plaintiff's due process claims fails to state a claim for relief and are DISMISSED.

**B.      Eighth Amendment Claims**

"Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment claim against a prison official an inmate must meet two requirements, "one objective and one subjective." *Lopez*, 203 F.3d at 1132. "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." *Id.*, 203 F.3d at 1133 (quoting *Allen v. Sakai*, 48 F.3d 1082, 1087-88 (9th Cir. 1995)).

   *1.      Failure to Protect*

"[P]rison officials have a duty . . . . to protect prisoners from violence at the hands of other prisoners." *Farmer Brennan*, 511 U.S. 825, 833 (1994). Not "every injury suffered by one prisoner at the hands of another [ ] translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A violation of the Eighth Amendment is only found when both the

objective and subjective components are met.  *See id.*  First, "the deprivation alleged must be, objectively, sufficiently serious . . .; a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'"  *Id.* (citations and quotations omitted).  In a failure to protect claim, the prisoner must show that "he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* (citations omitted).

Second, the inmate must satisfy the subjective element; the prison official must have acted with deliberate indifference.  *Farmer*, 511 U.S. at 834.  This means that the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "Mere negligence is not sufficient to establish liability."  *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).  Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted."  *Farmer*, 511 U.S. at 844-45.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  *Farmer,* 511 U.S. at 842.  For example:

14

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Id.* at 842-43 (citation omitted). Furthermore, "a prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843.

Plaintiff claims that Maxilum and other unidentified prison guards were "lax" and "negligent" by failing to notice that Couch was in Annex-1's kitchen, where he was not authorized. Plaintiff also states that the guards were distracted by an incident with another disruptive inmate, that Plaintiff observed as he walked to Annex-1's kitchen. Plaintiff neither alleges nor provide any facts suggesting that any prison official knew that there was a substantial risk to Plaintiff specifically, or to inmates in general. Nor does he claim that Maxilum or the other guards knew of bad blood between Couch and Plaintiff, or assigned Plaintiff to work in the kitchen in the early morning hours, knowing there was a danger that other inmates would be out of their cells and pose a danger to Plaintiff

15

or others. Plaintiff's Complaint does not allege direct or circumstantial facts showing that any prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed to Plaintiff, or that any prison official actually drew that inference. *See Farmer,* 511 U.S. at 837. While Plaintiff may be correct that the prison guards were negligent that evening, or in general, he provides nothing supporting a violation of his civil rights based on their deliberate indifference to Plaintiff's health and safety. Plaintiff fails to state a claim for failure to protect under the Eighth Amendment and this claim is DISMISSED.

    *2.    Segregation*

Being housed in administrative segregation does not constitute cruel and unusual punishment in violation of the Eighth Amendment. "[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt*, 459 U.S. at 468; *cf. Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997) (contemporary standards of decency are not violated by classification programs which pursue "important and laudable" goals and are instituted under the state's authority to operate correctional facilities). Even an indeterminate sentence in administrative segregation, without more, does not constitute cruel and

unusual punishment in violation of the Eighth Amendment. *Anderson v. County of Kern*, 45 F.3d 1310, 1315–16 (9th Cir. 1995) (no contact with any other inmate in administrative segregation, either for exercise, day room access or otherwise not cruel and unusual punishment); *Toussaint v. Yockey*, 722 F.2d 1490, 1494 n. 6 (9th Cir. 1984) (more than usual hardships associated with administrative segregation required to state Eighth Amendment claim).

Moreover, Plaintiff provides no facts showing that the conditions of his confinement in disciplinary segregation for thirty days were any different than those he experienced in administrative segregation. *See Sandin*, 515 U.S. at 484 (holding that the conditions within HCF's disciplinary segregation for 30 days mirrored the conditions in administrative segregation and "did not work a major disruption in [inmate's] environment"). Plaintiff's allegations that his housing in segregation, even when liberally construed, fail to state a cognizable claim for the violation of his Eighth Amendment rights and are DISMISSED.

## C.     Leave to Amend

The Complaint is DISMISSED for failure to state a claim. Plaintiff is granted leave to file a proposed amended complaint on or before May 11, 2011. The proposed amended complaint must cure the deficiencies noted above,

17

specifically demonstrating how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.

The court will not refer to the original pleading to make any amended complaint complete. Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading. Defendants not named and any claims not realleged in any amended complaint will be deemed to have been waived. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Furthermore, as a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). In an amended complaint, each claim and the involvement of each defendant must be sufficiently alleged. Failure to timely submit a proposed amended complaint by May 11, 2011, will result in AUTOMATIC DISMISSAL of this action for failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1)-(2), § 1915(e)(2).

**D.      28 U.S.C. § 1915(g)**

Plaintiff is notified that, pursuant to 28 U.S.C. § 1915(g), a prisoner may not bring a civil action or appeal a civil judgment under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim

upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." If Plaintiff is unable to amend the Complaint to cure the deficiencies enumerated in this Order, this dismissal may constitute a strike under 28 U.S.C. § 1915(g).

## IV. **CONCLUSION**

IT IS HEREBY ORDERED that:

(1)   The Complaint is DISMISSED for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(b) & 1915A(b)(1).

(2)   Plaintiff is GRANTED until May 11, 2011, to file a proposed amended complaint that cures the deficiencies and complies with the instructions detailed above.

(3)   Failure to file a proposed amended complaint on or before May 11, 2011, shall result in AUTOMATIC DISMISSAL of this action for failure to state a claim. If the proposed amended complaint fails to state a claim on which relief may be granted, it will be dismissed without further leave to amend and may thereafter be counted as a "strike" under 28 U.S.C. § 1915(g).

(4)     The Clerk of Court is directed to mail a form prisoner civil rights complaint to Plaintiff so that he may comply with the directions in this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 11, 2011.



_____
David Alan Ezra
United States District Judge

*Marcus v. Sequeira, et al.*, Civ. No. 11-00181 DAE-RLP; Order Dismissing Complaint; psas/Screening/dmp/2011/Marcus 11-181 DAE (ftsc lv amd)